BOLIN, Judge.
Plaintiff expropriated property owned by defendants in the City of Shreveport. Being unable to agree on a price, the state deposited the sum of $22,000 (the value calculated by plaintiff’s appraisers) in the registry of the court and the case went to trial in order to judicially establish the just and adequate compensation due the landowners for the property thus taken. At *497 the conclusion of the hearing, the district court made an award of $22,000 for the land and improvements, and defendants appealed to this court. After passing on several specific issues, we remanded the case in order that defendants might introduce certain evidence previously excluded by the lower court and for further proceedings consistent with the law and our pronouncements therein (La.App., 131 S.o.2d 129). Upon remand, additional evidence was submitted by stipulation and the lower court again made an award of $22,-000 for the property, from which judgment defendants have appealed.
The facts and background of this case were fully and clearly set forth when this matter was before us the first time and we shall not burden this record with a detailed re-statement of same. The property involved consisted of a city lot approximately 85 by 165 feet, upon which was located an old two-story frame dwelling and garage. The area was zoned as semi-commercial. From 1945 to 1952 Mrs. Naomi Crockett operated a very successful exclusive ladies clothing business thereon. She voluntarily closed the dress shop in 1952 and moved to a location in downtown Shreveport. The frame structure remained vacant and was never utilized thereafter. In the latter part of 1954, Mrs. Crockett considered moving her dress shop back -to its old location on the subject property. Before her plans materialized, the impending expropriation of the property for a through highway became known and she deemed it inadvisable to make the move, so the property continued vacant. When the order of expropriation was signed in 1959, the property had no market value because of the proposed construction of the expressway.
When the case was tried the first time, the district court predicated its award of $22,000 on the testimony of plaintiff’s appraisers. These experts testified the highest and best use for the property was commercial and estimated the value of the land to be $22,000 and the improvements worthless except for salvage value. They based their valuations on sales in the area which they concluded were comparable to the subject property. Defendants tendered witnesses to show the income- from Mrs. Crockett’s business from 1945-1952. Most of this evidence was excluded by the court during the first trial as being an unacceptable method of fixing value either of the land or improvements “for the reason that there was not a taking of a business in this case but the taking of property that had been vacant for seven years”. In our prior decision, we held there were no comparable sales or any other evidence upon which to fix a value of the property under the three most utilized approaches, i. e., (1) comparable sales, or market data approach, (2) reproduction cost approach and (3) rental income approach. Under these circumstances, we felt evidence of other income from the property, while not necessarily decisive, was material and relevant insofar as it had some bearing on the establishment of value of the property, particularly the improvements thereon.
When the case was remanded, the lower court permitted the introduction of the evidence previously excluded but again fixed the same value on the property concluding such additional evidence was not controlling.
We can appreciate the difficult and monumental task our esteemed brother below had in attempting to do justice between these parties within the framework of our jurisprudence and in compliance with the enunciations of this court in our former decree. While we do not minimize his efforts to correctly decide the case, we think any judgment not containing a substantial allowance to the landowners for the improvements on this property is inequitable and erroneous.
By our former decree, we decided there were no comparable sales upon which to fix a value on the so-called “market data” approach. We also decided, and the lower court agreed, since the property had *498 never been rented, the “rent income” approach could not be used. It must also be conceded the “replacement cost” approach is impractical because of the condition and age of the improvements. Under these circumstances any evidence throwing any light upon the value of either the land or the improvements should be considered in order to arrive at a just award.
 Our jurisprudence is well settled that the value of property expropriated should be based on its highest and best use. Arkansas Louisiana Gas Company v. Morehouse Realty Company, Inc. (La. App. 2 Cir., 1961), 126 So.2d 830, and cases cited therein. It must be conceded the highest and best use of this property was for an exclusive ladies ready-to-wear business. The best evidence of this is that such a business was highly successful on the same property for about seven years. In fact this is the only business ever located on the property and would be operating there today except for this expropriation. Therefore, it seems obvious the evidence of the income derived from the successful operation of such a business, while not alone controlling, must be taken into consideration in fixing a value of the property based on its highest and best use.
Two expert appraisers testifying for defendants said the income of the property from 1945 through 1952 indicated to them the improvements had a net potential rental income of $5,600 and $4,177.97. By capitalizing such income and allowing for expenditures for repairs, etc., they estimated the improvements on the property to have been worth $24,985 and $26,062.18 for use as an exclusive ladies ready-to-wear establishment. The lower court more or less discounted such evidence because Mrs. Crockett’s testimony concerning her plans to use the Louisiana Street property was “extremely nebulous”. Such a ruling is erroneous because it is well settled that where there is no market value for the property, the intrinsic value or the value to the owner must be taken into consideration in order that the owner shall be put in as good position pecuniarily as he would have been if the property had not been taken. Housing Authority of Shreveport v. Green et ux., 200 La. 463, 8 So.2d 295 (1942).
We have concluded an award of $22,000 for this land allowing nothing for the improvements is not in keeping with our jurisprudence of attempting to make the landowner whole after the expropriation. Since there is no serious dispute that the land alone is worth $22,000 for commercial purposes, we accept that figure. In addition to this, defendants are entitled to some award more than mere salvage value for the improvements thereon. As the highest and best use for this building was for a ladies ready-to-wear establishment, our problem is to fix the value of the building when used for such purposes. None of the evidence adduced seems to fit the well-defined and accepted “approaches”. However, this does not mean these landowners are not to be justly compensated for their expropriated property. As both the Louisiana and United States Constitutions guarantee that private property will not be taken for public use unless “adequate compensation” is paid therefor, the basic and fundamental problem is not to find a proper “approach” but rather to ascertain what is “adequate compensation”. Taking all the evidence into consideration, we think an award of $13,000 for the improvements would be proper.
For the reasons stated, the judgment appealed from is amended so as to increase the total award from $22,000 to $35,000 and as thus amended is affirmed. Plaintiff-appellee is taxed with such costs as it is legally obligated to pay.
Amended and affirmed.