CULPEPPER, Judge.
Under the statutory provisions for expropriation by a declaration of taking, LSA-R.S. 48:441 et seq., the State took a strip of land across the front of defendant’s property to widen an existing highway. Plaintiff deposited $26,681 as its estimate of just compensation. The defendant answered seeking an increase to the sum of $40,461. The district judge awarded a total of $39,829.33, including the amount of the deposit. Plaintiff appealed.
The facts show that before the taking the parent tract was almost rectangular in shape, fronting approximately 180 feet on the existing highway and being about 210 feet deep. On the property was a large frame building formerly used as a roller skating rink. It is located on La. Highway *557 No. 1 between the city of Alexandria and the entrance to the England Air Force Base. Its highest use is highway commercial.
The purpose of the taking was to widen the existing two-lane highway so as to provide four lanes. A strip of land approximately 108 feet deep was taken from the front of defendant’s property, leaving a remaining tract approximately 102 feet deep and fronting on the new highway righRof way line. After the taking, the remainder will have access to the four-lane highway.
The first issue is one of law. As it has done in several recent cases involving these highway widening situations, the State contends that the “before and after” method of appraisal should be used. Under this method, the value of the entire parent tract before the taking is determined and from this is subtracted the value of the remaining land after the taking. The difference between these two figures is the amount due the landowner. A majority of this court has consistently rejected this contention and held that the proper method is to determine the market value of the part actually taken without regard for the value of the remainder. For a full discussion see State of Louisiana, through the Department of Highways v. Mertens et al., 271 So.2d 280 (La.App. 3rd Cir. 1972).
Since the Department of Highways instructed its appraisers to use the “before and after” approach described above, the only expert testimony in the record appraising the frontage taken separate from the remainder in the rear is that of Mr. Hab Monsur, Jr., witness for the defendant. He testified that before the taking the parent tract had a value of $110 per front foot. He valued the part taken, measuring 180 feet on the front by a depth of approximately 108 feet, at $90 per front foot or a total of $16,200 for the value of the land taken. Mr. Monsur expressed the opinion that there would be no severance damages to the remainder because it would have a frontage on the new four-lane highway and would be worth at least $20 a front foot.
The trial judge did not follow exactly the method of appraisal used by Mr. Mon-sur but in effect reached the same result. He felt that Monsur’s method, of assigning a value of $90 per front foot to the part taken and only $20 per front foot for the remainder, necessarily implies that there were some severance damages. He therefore used Monsur’s appraisal of $110 per front foot for the parent tract to a depth of 210 feet and converted this to an average value of 52 cents per square foot. On this basis, the trial judge assigned a value of $9,949.47 for the 19,133.6 square feet taken.
To determine severance damages to the remainder, the district judge used $20 a front foot for the remainder and converted this to 19 cents per square foot. He subtracted 19 cents from 52 cents per square foot and arrived at a severance damage to the remainder of 33 cents a square foot, or a total severance damage of $6,098.86 for the remaining 18,481.4 square feet. Using this method, the district judge found a value of $9,949.47 for the part taken and $6,098.86 in severance damages, for a total of $16,038.33. This is only a few dollars less than the $16,200 estimate by Monsur for the value of the frontage taken without any allowance for severance damage to the remainder.
 We think it is preferable in these matters that the court use the procedures and opinions of the expert witnesses, where they are logical and reasonable, rather than its own, State v. Moresi, 189 So.2d 292 (La.App. 3rd Cir. 1966) and State v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970). We do not find the appraisal procedure used by Mr. Monsur objectionable, since it appears to us from a reading of his entire testimony that the basic reason he assigned no severance damage to the remainder is that it will have a *558 frontage on the new four-lane highway and will therefore actually suffer no diminution in value. (See Tr. 133-135) Therefore, we will amend the judgment to award $16,200 for the part taken and delete any award for severance damages.
The next issue concerns the award of $23,781 for improvements, which consist principally of the large frame building formerly used as a skating rink. Mr. Monsur used a replacement cost of $8 per square foot and depreciated this 40% to reach a depreciated value of $22,786. The State’s experts used $7.50 per square foot as replacement cost and depreciated this 50%. The district judge used Mr. Mon-sur’s estimate because he appeared to have more experience in commercial construction and depreciation. One of the State’s appraisers, Mr. Toups, conceded that he had no experience whatever in the construction of commercial buildings. We find no manifest error in the award by the trial judge for improvements.
 The final issue concerns the expert witness fee of $1,205 for Mr. Monsur. This is itemized as an appraisal fee of $1,000, plus $50 for one pretrial conference and $150 a day in court and $5 for photographs. We find no manifest error in this award of an expert witness fee which rests largely within the discretion of the trial judge.
For the reasons assigned, the judgment appealed is amended by increasing the compensation to the landowner from the sum of $39,829.33 to the sum of $39,991, less the amount deposited. As thus amended, the judgment is affirmed.
Affirmed, as amended.